NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No.  08-2222
_____

BETTY HIXSON
(Survivor of and o/b/o DEMPSEY HIXSON),

Petitioners

v.

DIRECTOR OWCP, UNITED STATES DEPARTMENT OF LABOR;
U.S. STEEL MINING COMPANY,

Respondents
_____

On Petition for Review from an
Order of the Benefits Review Board,
United States Department of Labor
(Benefits Review Board No. 07-0471)
_____

Submitted Under Third Circuit LAR 34.1(a)
October 19, 2010

Before:  HARDIMAN, GREENAWAY, JR. and NYGAARD, *Circuit Judges*.

(Filed: November 10, 2010)

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Betty Hixson (Hixson), widow of Dempsey Hixson (Dempsey), filed a petition for review of the Black Lung Benefits Review Board denying her claim for benefits under 30 U.S.C. § 921(a). We will deny the petition.

I.

Because we write solely for the parties, we narrate only those portions of the facts and procedural history that are necessary to our decision. The Black Lung Benefits Act (Act), 30 U.S.C. § 901 *et seq.*, and its implementing regulations impose upon certain coal mine operators liability for the total disability or death of workers in the operators' mines if the disability or death was caused by pneumoconiosis (a lung disease) arising out of coal mine employment. *See* 30 U.S.C. § 921(a); 20 C.F.R. §§ 718.204 (total disability), 718.205 (death).

Dempsey Hixson, a coal miner for over 20 years, smoked cigarettes regularly for much of his life. Dempsey retired from mining in 1983, suffered various pulmonary and respiratory difficulties that increased in severity with time, and ultimately died from pneumonia in 2001.

Dempsey filed multiple applications for benefits under the Act. In his final application, after protracted proceedings before multiple Administrative Law Judges (ALJs) and the Benefits Review Board, Dempsey was ultimately found to be suffering from pneumoconiosis arising from coal mining and to be totally disabled. Nevertheless,

2

the Board denied benefits based on a lack of proof that Dempsey's total disability was caused by the pneumoconiosis. Dempsey filed a number of motions for modification, some of them including additional evidence. Before his last motion could be heard, Dempsey died, and Hixson added a survivor's claim.

Because the previous medical evidence had established Dempsey's pneumoconiosis, U.S. Steel conceded that he had suffered from the disease and that it arose out of coal mine employment, but maintained that his disability and death were not caused by it. U.S. Steel offered the expert opinion of Dr. Everett Oesterling, a board-certified clinical pathologist, who opined that Dempsey's pneumoconiosis was too minor in nature to have caused either his disability or his death. Oesterling instead pointed to Dempsey's cigarette smoking and asthma as the causal agents behind his pulmonary and respiratory problems.[1] The ALJ found Dr. Oesterling's opinion to be persuasive and in accord with the weight of the medical evidence adduced in prior proceedings. Accordingly, the ALJ denied the motion for modification. Hixson appealed to the Board, which affirmed.

---

[1] We recognize that the record contains other medical evidence and that, in considering a motion for modification, an ALJ must consider all of the evidence, including that adduced in prior proceedings. *See Nataloni v. Director, Officer of Worker's Comp. Programs*, 17 B.L.R. 1-82 (1993). We here address only Dr. Oesterling's opinions because Hixson limits her competence objections to those opinions and does not lodge any complaint with respect to the ALJ's weighing of the remaining evidence.

II.

Hixson now petitions for review of the denial of the motion for modification.[2]  An

order denying benefits can be modified "on grounds of a change in conditions or because

of a mistake in a [previous] determination of fact."  20 C.F.R. § 725.310(a).  In reviewing

an ALJ's decision with respect to benefits:

> [t]he Board is bound by the ALJ's findings of fact if they are supported by substantial evidence. Our review of the Board's decision is limited to a determination of whether an error of law has been committed and whether the Board has adhered to its scope of review.
>
> In reviewing the Board's decision, we must independently review the record and decide whether the ALJ's findings are rational, consistent with applicable law and supported by substantial evidence on the record considered as a whole. Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." We exercise plenary review over the ALJ's legal conclusions that were adopted by the Board.

*Hill v. Dir., Office of Worker's Comp. Programs*, 562 F.3d 264, 268 (3d Cir. 2009)

(citations and some internal quotation marks omitted).

For the reasons that follow, we will deny the petition.

III.

Hixson first assails the Board's affirmance of the ALJ's conclusion that she failed

to prove that Dempsey's total disability was due to his pneumoconiosis.  She does so by

maintaining that U.S. Steel's admission that Dempsey suffered from pneumoconiosis

---

[2] We have jurisdiction pursuant to 33 U.S.C. § 921(c).

4

arising from his coal mine employment eliminated the requirement that she make any showing of causation.

20 C.F.R. § 718.204(c)(1) provides that, in order to establish that her husband was "totally disabled due to pneumoconiosis," Hixson must demonstrate that the disease either had "a material adverse effect on [his] respiratory or pulmonary condition," *id.* §18.204(c)(1)(I), or "[m]aterially worsen[ed]" some other "totally disabling respiratory or pulmonary impairment." Hixson's argument relies on the regulatory definition of "pneumoconiosis" found at 20 C.F.R. § 718.201, which reads:

> (a) For the purpose of the Act, "pneumoconiosis" means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment. This definition includes both medical, or "clinical", pneumoconiosis and statutory, or "legal", pneumoconiosis.
>     . . . .
> (b) For purposes of this section, a disease "arising out of coal mine employment" includes any chronic pulmonary disease or respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment.

Hixson maintains that the phrase "substantially aggravated by[] dust exposure in coal mine employment," as used in this regulatory definition of pneumoconiosis, is substantively identical to § 718.204(c)(1)(i)'s causation requirement of a "materially adverse effect on the miner's respiratory or pulmonary condition." Under Hixson's theory, U.S. Steel's admission that her husband had pneumoconiosis arising out of coal mine employment absolves her from submitting further proof of causation.

The Board rejected this argument, citing multiple authorities for the proposition that causation is an element of a benefits claimant's case distinct from the existence of pneumoconiosis. We agree. If § 718.201(b) provided that an illness can be regarded as pneumoconiosis *only* if it is "substantially aggravated" by such employment, Hixson's argument might have some merit. But § 718.201(b) expressly states that a lung ailment can *also* qualify as pneumoconiosis simply by being "significantly related to" mine employment. We think it abundantly clear that this "significantly related" standard can be satisfied even in cases where the illness does not create any material adverse effects on the miner's health, within the meaning of § 718.204(c)(1). Accordingly, an admission that a miner has pneumoconiosis is not equivalent to an admission that the illness caused any total disability the miner may have suffered, and we will affirm the Board's decision in this regard.

IV.

Hixson also argues that the testimony of Dr. Oesterling, U.S. Steel's expert, was incompetent because it contradicted the fundamental premises of the statutory and regulatory regime:

> The Act and its implementing regulations provide compensation and other benefits . . . to miners' surviving dependents where death is due to pneumoconiosis. For purposes of the Act, death is considered due to pneumoconiosis if the disease was a "substantially contributing cause or factor" leading to death. 20 C.F.R. §718.205(c). This term has been held to encompass situations in which pneumoconiosis "actually hastened" the miner's death.

6

*Consol. Coal Co. v. Kramer*, 305 F.3d 203, 205 (3d Cir. 2002). Thus, it is axiomatic to this remedial scheme that pneumoconiosis is indeed capable of hastening death. We have held that ALJs may disregard as incompetent expert opinion evidence that contradicts fundamental tenets of this sort. *Id.* at 210.

Hixson, however, overstates the import of the regulatory scheme at issue here. She states that "[u]nder the Rules as promulgated by the Director, one cannot have *de minimis* pneumoconiosis," Pet. Br. at 29 n.3, implying that every case of the illness necessarily hastens death, thus invalidating any evidence that a given individual's death was not caused by it. This is plainly wrong. The regulations indicate only that it is *possible* for pneumoconiosis to hasten death, not that it *always* does so. And, as the Board noted, Dr. Oesterling's testimony in this regard was not at all in tension with the regulations. Oesterling simply opined that pneumoconiosis did not hasten *Dempsey's* death, not that it was incapable of hastening anyone's death. Accordingly, the Board did not err in affirming the ALJ's consideration of Oesterling's testimony.

V.

For the reasons stated, we find no legal error in the Board's conclusions and substantial evidence supported the ALJ's findings of fact. Accordingly, we will deny Hixson's petition for review.